## Case No. 11,126.

PICKETT v. McGAVICK.

[14 N. B. R. 236; 3 Cent. Law J. 303; 13 Alb. Law J. 218, 400; 2 N. Y. Wkly. Dig. 378.] [1]

District Court, W. D. Arkansas. March Term, 1876.

BANKRUPTCY—SUIT TO SET ASIDE DISCHARGE—LIMITATIONS.

A suit to set aside a discharge of a bankrupt must be brought within two years from the date of the same.

[This was a bill by W. S. Pickett, assignee, against Felix G. McGavick, to set aside a discharge in bankruptcy.]

Pillow & Pillow, for complainant.
Stephenson & Stephenson, for defendant.

PARKER, District Judge. This is a suit brought by the plaintiff, as assignee in bankruptcy of the defendant, against the defendant, to set aside his discharge as a bankrupt, and recover from him a large amount of diamonds, alleged by the plaintiff to be of the value of five thousand dollars. Plaintiff alleges that on the 19th day of December, 1868, defendant, McGavick, filed his petition in the bankrupt court for the Eastern district of Arkansas, sitting at Little Rock; that he was duly declared a bankrupt, and on the 14th day of June, 1871, received his discharge as such bankrupt; that the plaintiff was appointed assignee of said bankrupt; that at the time the defendant filed his schedule of assets as a bankrupt, he omitted from said schedule the following property, to wit: Three solitaire diamonds studs, one cluster diamond ring, and one pair of solitaire diamond cuff buttons; all set in gold, and estimated by him to be worth five thousand dollars. That the defendant fraudulently withheld them from the assignee. This suit in equity is to set aside the discharge, and recover these diamonds, or their value, for the benefit of the creditors of this bankrupt.

Suit was brought in this case on the 10th day of June, 1874. The plaintiff alleges that he did not discover that defendant had so fraudulently withheld this property, until the —— day of July, 1872. The plaintiff, among other things, prays that the discharge of the defendant as a bankrupt may be held void, and that the defendant may be still held responsible for his debts. To this bill in equity the defendant sets up the plea of the statute of limitations, alleging in said plea "that the said supposed cause of action in said complaint mentioned, did not accrue at any time within two years next before the exhibiting of the bill of said plaintiff against the said defendant, in this behalf."

It is difficult to tell, from the face of this plea, whether the defendant intends to rely upon section 2 of the bankrupt law [18 Stat. 178], or section 34 of the original act of 1867 [14 Stat. 533]; but, from the brief filed by the defendant's counsel, Mr. Stephenson, it is clear that he relies upon section 34 of the bankrupt law. If the provisions of section 2 of the bankrupt law could be made to apply to this case, then the rule would apply as laid down by the supreme court, in Bailey v. Glover, 21 Wall. [88 U. S.] 342, "that the bar does not commence to run, in cases where the action is intended to obtain redress against fraud concealed by the party, or which, from its very nature, remains secret, until the fraud is discovered." But the question presents itself, does this section apply to this case? From the language of this section, I am of the opinion that it applies to cases only where suit is brought in regard to property held adversely to the bankrupt and the assignee, or to cases (as it now stands amended) where suit is brought to recover any debt that may be due the bankrupt. Davis v. Anderson [Case No. 3,623]; Bailey v. Wier, 21 Wall. [88 U. S.] 342; Smith v. Crawford [Case No. 13,030]. Then we are called on to ascertain the true construction of the 34th section of the bankrupt act. The court has no hesitation in saying, if it be true, as alleged in the petition, that the defendant was guilty of the act charged against him, that it presents a most flagrant and outrageous case of fraud, and one which this court will, if it can, aid in uncovering. But, bad as this case may be, we must treat it legally, and if a remedy is wanting under the law, it is not with the court (which does not make laws, but construes and administers those already made), but with the law-making power. Section 34 of the bankrupt law provides that any creditor of the bankrupt may, at any time within two years after the date of the discharge, apply to the court to set aside and annul the same, on the ground that it was fraudulently obtained.

When does the cause of action first accrue in a case under this section? From the date of the discharge, or from the discovery of the fraud? Under the ordinary statutes of limitations, which provide that suit shall be brought in a specified time after the cause of action accrues, it has become a fixed rule, that, where an action is based on fraud, the statute does not commence to run until the discovery of the fraud, or until it has become known to the party injured by the fraud. Because it can well be said that a cause of action does not accrue until the party could avail himself of a remedy to enforce that cause of action, and he could not do so until the cause of action was discovered or became known to him. But this section is different from the ordinary statute of limitations. This language is entirely different. It positively provides that the discharge may be contested at any time within two years after the date thereof, on the ground that it was fraudulently obtained. That time (the date) must, then, in my judgment, be taken as the time when the cause of action accrues.

[1] [Reprinted from 14 N. B. R. 236, by permission. 2 N. Y. Wkly. Dig. 378, contains only a partial report.]

In the case of Corey v. Ripley [57 Me. 69], decided by the supreme court of Maine, the judge says: "Instead of subjecting the bankrupt to the liability of having the validity of his discharge called in question, in any and all suits that should be brought against him for his debts, or provable under the bankrupt act for an indefinite time, the proviso in the 34th section of the act of 1867 was intended to limit all contestants to the period of two years from the date of the discharge, and to the tribunal therein specified, in respect to the time and mode of annulling his discharge." The act (says the court) in effect says to all such, 'You have had an opportunity to prove your claims and to show cause why your debtor should not receive his discharge in bankruptcy; you are allowed two years to impeach that discharge before the tribunal that granted it; at the expiration of that period you will have had your day in court, and must thereafter be forever silent.' 'Interest reipublicæ ut sit finis litium.' The commonwealth is interested that there be an end of contention.

The supreme court of Texas, in the case of Alston v. Robinett [37 Tex. 56], says: "Every creditor of the bankrupt may prove his claim and have his day in court; he may defeat the discharge of a fraudulent bankrupt. The law even gives him two years within which to attack the discharge after it has been granted. These provisions are ample to meet the end of justice. The question should some time be definitely settled, whether the discharge should be treated as valid or not." In the case of Way v. Howe, 108 Mass. 502, the court, among other things, says that the creditor "should be obliged to try the validity of the discharge while the facts are comparatively recent."

From the language of the 34th section, and the general policy of the law of bankruptcy, I am inclined to the opinion that congress intended to limit the creditors, or any one representing them, to two years from the date of the discharge, as the time alone within which they might seek to set aside or annul the same. This is the interpretation placed upon that section by all well-considered cases. I am aware that a different construction was placed upon the section by Judge Taft, of the superior court of Cincinnati, in the case of Perkins v. Gay [see note at end of case], where he held that the discharge could be attacked at any time and in any court for fraudulent concealment by the bankrupt. But, with all due respect to that learned judge, I think this is not good law, that such a construction is not deducible from the language of the bankrupt law, or from its intent or spirit.

With my view of the law, the plea of the statute of limitations will be held good, and judgment will go for the defendant.

[NOTE. The following is the opinion of Judge Taft, in the case of Perkins v. Gay, in the superior court at Cincinnati, referred to in the above opinion. It was filed in 1870, and is reprinted from 3 N. B. R. (Quarto) 189:

["Taft, J. The suit is founded on a judgment rendered against the defendant some twelve years ago in Erie county, Ohio, for $1,266 damages and $43.95 costs. The answer sets up a decree in bankruptcy rendered October 15th, 1867, discharging defendant, Gay, from all his debts. The plaintiff replies that the defendant concealed valuable property when he made his application in bankruptcy, and describes several parcels of real estate situated in Indiana, not included in his schedule, but which the defendant owned at the time of making his application. To this the defendant demurs.

["The defendant, to sustain his demurrer to the plaintiff's reply, relies on the 34th section of the bankrupt act of 1867 (14 Stat. 533), which provides that 'a discharge duly granted under this act shall, with the exceptions aforesaid, release the bankrupt from all debts,' and that the decree shall be a complete bar to all suits therein, and that 'the certificate shall be conclusive evidence of the fact and regularity of the discharge.' The plaintiff, however, claims that there is still another ordeal to which the bankrupt is liable to be subjected under the 29th section of the act. This section provides that 'no discharge shall be granted, or, if granted, be valid, if the bankrupt has concealed any part of his estate,' or 'has been guilty of fraud' in any of the sundry particulars in that section specified. It is provided in the 34th section that in making an application to set aside the discharge the creditors shall specify some one of the acts of fraud mentioned in section 29, and the defendant claims that this indicates that the question of the validity of the discharge raised under the 29th section is to be determined according to the provision of the 34th section, and not otherwise; and such is the construction adopted by Avery & Hobbs in their recent and valuable work on Bankruptcy. In their comments on section 34 of the bankrupt act, they remark (pages 245, 246, note b): 'It will be observed that there is no appeal given upon the allowance of a discharge; but, in case any creditor desires to contest its validity, this clause of the act points out the way. It was evidently intended by the framers of the law to limit all contestants to the period of two years after granting the discharge, and to the forum that granted it. In all suits founded upon any claim provable in bankruptcy, the discharge is by express terms made "a full and complete bar," and there is no such reservation as that in the law of 1841 (5 Stat. 440), "unless impeached for fraud," etc. It would seem to follow, from the language of this section, that the discharge cannot be impeached in any suit at law, founded upon any claim provable in bankruptcy, nor can the regularity of the discharge in any suit be inquired into. There is but one way of contesting its validity, and that is expressly indicated in this section.' Mr. James, on the contrary, in his work on the Bankrupt Law (page 136), after discussing the provisions for contesting the validity of the discharge under the 34th section, says: 'The bankrupt has still another ordeal to pass through. If sued by a creditor for a debt due before the adjudication of bankruptcy, such creditor proceeds with his action, and does not prove under the bankrupt's estate, and the bankrupt, having obtained his order of discharge, pleads it in bar to such action, the creditor may, by way of replication to such plea, impeach such discharge upon any or all of the grounds in respect of which this act invalidates it; and the question thus raised upon the pleadings is that which is to be tried by the jury.'

["The question of construction thus presented by these two learned commentators is not without difficulty,—a difficulty not at all aided by their disagreement. Under former bankrupt acts, the certificate of the bankrupt has been impeachable for fraud in obtaining it, in whatever court it was pleaded. The present act provides

in the 34th section for a proceeding to set aside the certificate of discharge, to be commenced in the court which granted it, within two years. This, however, does not, in our opinion, take away the right to impeach the certificate under the 29th section, which says expressly that 'no discharge shall be granted, or if granted be valid, if the bankrupt has wilfully sworn falsely in his affidavit annexed to his petition,' 'or if he has concealed any part of his estate or effects,' —with several other similar exceptions.

["The 34th section provides 'that a discharge duly granted under this act with the exceptions aforesaid, release the bankrupt from all debts, claims, liabilities, and demands which were or might have been proved against his estate in bankruptcy, and may be pleaded by a simple averment that on the day of its date such discharge was granted to him, and the certificate shall be conclusive evidence in favor of such bankrupt of the fact and regularity of such discharge. Always provided that any creditor of said bankrupt, whose debt was proved or provable against the estate in bankruptcy, who shall see fit to contest the validity of such discharge on the ground that it was fraudulently obtained, may, at any time within two years after the date thereof, apply to the court which granted it to set aside and annul the same. Said application shall be in writing, shall specify which, in particular, of the several acts mentioned in section twenty-nine it is intended to give evidence of against the bankrupt,' etc.; providing also for notice to the bankrupt and for a hearing, 'and that if the court shall find the fraudulent acts proved, and that the creditor had no knowledge of the same till after the granting of said discharge, judgment shall be given in favor of such creditor, and the discharge of said bankrupt shall be set aside and annulled.' It is to be observed that this section, in making the certificate conclusive, expressly says 'with the exceptions aforesaid.' For the defendant it is claimed that the 'exceptions aforesaid' must be taken to refer to those only which are contained in section 33. immediately preceding. But we think that they may be taken to refer to all the exceptions to the validity of the discharge which are mentioned in the preceding sections, including section 29.

["The result of the construction claimed for this defendant would be to enable a bankrupt to secure the benefit of a premature discharge from his creditors, though he may have defrauded them by concealing his property. It may be that the legislature intended to leave the creditors no longer time than two years to inquire into the fraud. But it seems to offer a permission to fraud and concealment, which is not to be looked for in a bankrupt act that professes to discharge a man from his honest debts on the surrender of his property. It has been argued that the bankrupt would not secure the right to keep his property from his creditors if he should succeed in concealing it for two years. This may be true. The assignee would probably be entitled to recover the concealed property if he could find it. Nevertheless, such a construction of the act as is claimed for the defendant, we think, would encourage fraud. The discharge from personal liability for his debts is the grand object of the bankrupt, and this he is entitled to if he gives up his property. A dishonest bankrupt may hope successfully to conceal his property for two years. If he can secure an effectual discharge, he can afford to run the risk of losing his concealed property after the two years have passed. The creditor would have less motive to detect the fraud upon the law, as he could not thereby deprive the bankrupt of his ill-gotten certificate, or hold him liable personally. We are unwilling to adopt a construction which will so obviously tend to encourage deception and fraud, unless the language of the act clearly requires it.

["It has been the uniform policy of all former bankrupt acts, both in this country and in England, to guard against concealment of property by the bankrupt. The temptation is so strong to hide from his creditors, and his facilities are so great for hiding assets, the existence of which he alone may know, that the severest enactments have not always prevented it. It is not to be presumed that the legislators of the present day would intend to remove any of the guards against temptation and fraud on this critical point. Nor is it to be regarded as a hardship that the bankrupt shall be required to be ready to meet any charge of this kind. The burden of proof is on the creditor who asserts such a concealment; and, if the bankrupt is innocent, he need not be very much embarrassed in his defense.

["We think, therefor, that the provision in the 34th section making the certificate conclusive, and allowing an application within two years in the U. S. district court to annul it, did not intend to cut off a creditor from setting up a fraudulent concealment by the bankrupt of his property, against his certificate, in whatever court he may plead it. Demurrer overruled."]